IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BILLIE RAY LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 3904 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Christopher Hicks died during or immediately following his arrest by the Chicago police department. His brother Billie Ray Lewis, as special administrator of the estate, sues the City of Chicago, and police officers Louis Soto, Artemio Pena, Robert Arnolts, and Brian Devan, for civil rights violations under 42 U.S.C. § 1983 (Counts I and II), wrongful death (Count III), pain and suffering under Illinois' survival statute (Count IV), and intentional infliction of emotional distress (Count V). He claims the city is liable for any judgment rendered against the officers (Count VI). Officers Pena and Devan move for summary judgment on Counts I, III, IV and V pursuant to Fed.R.Civ.P. 56. Officers Soto and Arnolts move for summary judgment on Counts III, IV and V.[1]

---

[1] The officers filed a statement of undisputed facts ("Officers' facts"). Lewis responded to the Officers' facts ("Pl. Resp. Officers' facts") and filed a statement of additional undisputed facts ("Pl. facts"). The officers responded to Lewis' additional facts ("Officers' Resp. facts") and filed a reply to their statement of undisputed facts. The court disregards the reply because it is not authorized by Local Rule 56.1.

## BACKGROUND

All facts are undisputed unless otherwise noted. Officers Soto, Pena, Arnolts and Devan are Chicago police officers. Pl. Resp. Officers' facts ¶ 1. On May 26, 2004, Officers Soto and Arnolts worked as plain clothed police officers assigned to patrol a Chicago Transit Authority ("CTA") red-line train. *Id.* at ¶ 9. They observed Hicks, an African American male, standing on the underground platform at the Roosevelt CTA station. *Id.* at ¶ 10. Officer Soto became suspicious of Hicks. Def. Resp. facts ¶ 1. He and Arnolts followed Hicks onto a northbound train. Pl. Resp. facts ¶¶ 12-13. Hicks violated a CTA ordinance by walking between cars while the train was moving. *Id.* at ¶¶ 14-15. Chicago police officers are authorized to enforce CTA ordinances. *Id.* at ¶ 15. Officer Soto approached Hicks, identified himself as a police officer, and asked Hicks for identification. *Id.* at ¶ 16. Hicks produced his identification to Soto. *Id.* at ¶ 17.

Soto informed Hicks he violated a CTA ordinance by moving between train cars while the train was moving. Soto became nervous and agitated. *Id.* at ¶ 18. As the train doors were shutting at Harrison, Hicks ran from the train. *Id.* at ¶ 20. Both officers exited the train at Jackson, the next stop, to search for Hicks. *Id.* at ¶ 21. The officers walked to State Street. *Id.* at ¶¶ 25, 27. Officer Soto spotted Hicks on State Street. *Id.* at ¶ 27. The parties dispute who approached Hicks. Defendants assert Arnolts alone approached Hicks; Lewis claims both Soto and Arnolts approached him. *Id.* at ¶¶ 28-29. As Hicks walked towards the bus stop located near the intersection of Van Buren and State Street, Officer Arnolts told Hicks "Chicago Police, stop."[2] *Id.* at ¶ 31.

The parties dispute what happened next.

---

[2] Lewis disputes this fact. However, his record citation does not support the denial and this fact is deemed admitted. Pl. facts ¶ 31, Ex. 3 at 104-5.

2

## A.    Officers' Account of the Arrest

According to the officers, Hicks immediately started yelling and screaming and ran at Officer Arnolts. Hicks tried to strike Officer Arnolts, pushed him to his side, and then charged toward him using a football type forearm hit strike. Officers' facts ¶¶ 32-33. Hicks continued to fight with both of them. *Id.* at ¶¶ 34-38. Officer Soto then jumped on Hicks' back and put his left arm around Hicks' neck to try to pull him down. *Id.* at ¶ 39-41. Hicks continued to fight back. The officers considered him an assailant without a weapon. *Id.* at ¶¶ 45-51. Officer Soto then grabbed Hicks around the head in a headlock and both officers unsuccessfully tried to pull him down to the ground. *Id.* at ¶¶ 52-53. Eventually, the officers brought Hicks down to the ground. *Id.* at ¶ 61. But they were only able to cuff his left hand. *Id.* at ¶ 62. Officer Soto used his weight to pull Hicks' head down to the ground, grabbing his head over the ears and across his face. *Id.* at ¶ 64. Hicks still struggled with his face down. *Id.* at ¶ 71.

According to Officer Arnolts, he observed two uniformed police officers (Pena and De Van) walking down the street and called for their help. *Id.* at ¶ 72. When they arrived on the scene, Officer Soto had Hicks in a headlock with his left arm around Hicks' head, and his fist underneath Hicks' chin. *Id.* at ¶ 78. Hicks' right arm was not cuffed and he continued to struggle. Officer Pena performed a three-point kneeling stance, in which he put his knee on Hicks' back to pull Hicks' right hand out from under his body. Pena successfully handcuffed Hicks using this maneuver. *Id.* at ¶¶ 83-85. Pena testified the cuffing process lasted a matter of seconds. *Id.* at ¶ 89. Immediately after he was handcuffed, Hicks became unresponsive. *Id.* at ¶ 91. Officers Pena and Soto called for an

3

ambulance.[3]  Pena rolled Hicks on his side to check for a pulse.  *Id.* at ¶ 92.  Pena felt a pulse and saw Hicks breathing.[4]  Id.

## B.  Lewis' Account of the Arrest

Lewis presents evidence to dispute the officers' testimony.  Lewis relies largely on the testimony of two eyewitnesses, Kevin Kendall[5] and Laura Soria.  Soria witnessed the incident from her car.  She called 911 at approximately 10:33 p.m.  *Id.* at ¶ 43.  According to her testimony, two white men were on top of a black man on the ground.  The white men had the black man in a choke hold.  *Id.*  Soria knows the difference between a headlock and a choke hold; the officers used a choke hold and not a headlock.  Pl. Resp. Officers' facts ¶ 7, Ex. 26.

According to other evidence presented by Lewis, Hicks was leaning against a wall when Soto and Arnolts approached him.  The officers gestured for Hicks to move and he began to walk away.  Pl. Resp. officers' facts ¶ 32.  Arnolts and Soto then "jumped" Hicks.  *Id.* at ¶ 32; Pl. facts ¶ 3.  The officers repeatedly punched him and he tried to block their blows.  One of the officers punched Hicks so hard he fell to the ground and rolled onto his stomach.  Pl. Resp. Officers' facts ¶ 32; Pl. Facts ¶ 3.  Hicks repeatedly yelled things such as "leave me alone" and "I haven't done anything wrong."  Pl. facts ¶ 3.  He was not fighting or running away; he was trying to block the officers' punches.  *Id.* at ¶ 4.  The officers yelled obscenities at Hicks such as "You Mutherfucker" and "I'm gonna beat

---

[3]Lewis admits Pena called an ambulance.  He denies that Soto called for an ambulance too.  Pl. Resp. Officers' facts ¶ 92.

[4]Lewis admits this fact.  Pl. Resp. Officers' facts ¶ 95.

[5]The officers argue Kendall's testimony should be given little weight because he is an admitted drug user and drank alcohol the day of the incident.  The court cannot consider credibility of the witnesses on a motion for summary judgment.  *See Morfin v. City of East Chicago*, 349 F.3d 989, 999 (7th Cir. 2003).

your ass." *Id.* at ¶ 5. Both officers kicked Hicks and one of them straddled him and began to choke him. *Id.* at ¶ 6. The non-choking officer yelled "Stop, that's enough." Bystanders also urged the choking officer to stop. *Id.* The choking officer told the bystanders to "get the fuck away" and continued to choke Hicks. *Id.* at ¶¶ 6, 10.

The parties dispute what happened after Officers Pena and De Van arrived on the scene. Lewis presents evidence that Soto had Hicks in a choke hold when they arrived. Pl. facts ¶¶ 7, 10. Officer Arnolts was laying across Hicks' legs. Pl. facts, Ex. 6 at 40. They saw Soto squeezing around Hicks' neck with both arms. *Id.* at ¶¶ 6-9. Hicks may have been struggling for his life. Pl. Resp. Officers' facts ¶ 83. Pena then performed a three-point kneeling stance to successfully handcuff Hicks. *Id.* Hicks became unresponsive immediately after he was handcuffed. *Id.* at ¶ 91. Neither Pena nor De Van intervened to stop Soto from choking Hicks. Pl. facts ¶¶ 22, 23, 30.

## C.    Police Tapes

Police tapes indicate that Pena and De Van were on the scene by 10:35 p.m. Pl. facts, ¶ 15, Ex. 15. At that time, the police dispatchers radioed Pena that there was a battery in progress at State and Van Buren in response to Soria's 911 call. Pl. facts ¶ 15. At 10:36 p.m., Pena responded to the radio call indicating that he and De Van were already on the scene. Hicks was handcuffed by the time Pena responded. *Id.* At 10:36:10 p.m. Pena radioed to police dispatch that they had the man in custody. At 10:36:20 p.m. he told police dispatch to "slow it down," meaning to stop any other units from responding to the scene. *Id.* Hicks was lying face down, handcuffed, and may have already been unresponsive when Pena told dispatch to "slow it down." *Id.* Pena did not request an ambulance at that time. He first requested an ambulance about one minute later, at 10:37:20 p.m.

*Id.* At 10:37:30 p.m., Pena again requested an ambulance, and reported to police dispatch that "everything is okay." *Id.*

### D. Paramedics Arrive

When the paramedics arrived, Hicks was lying on his stomach, handcuffed, with his head turned to one side. He had not been turned onto his back to open his airway. Pl. facts ¶ 16. He was not breathing and did not have a pulse. Officers' facts ¶ 114. Hicks was taken by ambulance to Northwestern Memorial Hospital. He was pronounced dead at 11:13 p.m. Medical records and testimony indicate the cause of Hicks' death was asphyxia due to restraint. Pl. facts ¶ 27, Ex. 5, 8, 9, 22.[6]

Lewis' expert witness testified that Officer Pena's use of force to restrain Hicks likely contributed to his death by asphyxiation. Pl. facts ¶ 23. According to the expert, any officer who restricted Hicks' movement while Soto was choking him likely contributed to his death by asphyxiation. *Id.* at ¶ 30. The medical examiner also testified the officers' restraint of Hicks contributed to his death by asphyxiation. Pl. facts ¶ 23. Lewis presents medical testimony that a choking victim suffers extraordinary discomfort prior to death. *Id.* at ¶ 28.

The partes agree deadly force was not justified during Hicks' arrest. Def. Resp. Pl. facts ¶ 11.

---

[6]The death certificate and coroner's medical report are admissible under Fed.R.Evid. 803(8). *See Blake v. Pellegrino*, 329 F.3d 43, 48-49 (1st Cir. 2003); *Springer v. K-Mart Corp.*, 1998 U.S. Dist. LEXIS 25151, at *3-4 (E.D. La. Dec. 16, 1998).

## DISCUSSION

### I.     Summary Judgment Standard

Summary judgment is appropriate when the moving papers and affidavits show there is no

genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party meets its burden,

the non-moving party must go beyond the pleadings and set forth specific facts showing there is a

genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir.

1999). The court considers the record as a whole and draws all reasonable inferences in the light

most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972

(7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

### II.     Officers Pena and De Van's Motion for Summary Judgment

#### A.     Count I: Excessive Force Claim Under 42 U.S.C. § 1983

Officers Pena and De Van argue summary judgment must be granted on Count I because they

did not use or encourage the use of excessive force during Hicks' arrest. They argue the excessive

force occurred before they arrived; Pena merely performed a three-point kneeling stance to handcuff

Hicks, and De Van merely stood by watching. The officers argue they cannot be liable unless they

directly participated in or encouraged the use of excessive force. Lewis argues Pena is liable for

directly participating in the use of excessive force. He further argues both Pena and De Van are

liable because they knew Soto used excessive force and failed to intervene to stop him.[7]

The right to make an arrest or investigatory stop carries with it the right to use some degree

of physical coercion, but the Fourth Amendment prohibits the use of excessive force during the

execution of an arrest. *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989). In order to

decide whether the force used during an arrest is excessive, the court must examine the totality of

circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was

justified by the countervailing government interests at stake. *Jacobs v. City of Chicago*, 215 F.3d

758, 773 (7th Cir. 2000). The Fourth Amendment test is an objective one; the court must consider

factors such as the severity of the crime at issue, whether the suspect poses an immediate threat to

the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

arrest by flight. *Id.* An officer's use of deadly force to apprehend a suspect is unreasonable, absent

probable cause to believe the suspect is dangerous or has committed a violent crime. *Id.* at 774.

To prevail on an excessive force claim against a police officer under 42 U.S.C. § 1983, a

plaintiff must establish each individual officer's personal responsibility for the excessive force used.

*Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). A police officer satisfies the personal

responsibility requirement of § 1983 if he acts or fails to act with a deliberate or reckless disregard

of the plaintiff's constitutional rights. *Id.* A police officer who is present and fails to intervene to

---

[7]Pena and De Van argue Lewis cannot assert this argument because the complaint does
not specifically allege failure to intervene. In support of their argument, the officers purportedly
quote from *Schroeder v. Copley Newspaper*, 879 F.2d 266, 270, n. 2 (7th Cir. 1988). However,
the quote is not contained in *Schroeder*. *Schroeder* holds that an argument raised for the first
time in a reply brief is waived. That holding is inapposite. Lewis does not seek to advance a
new claim. His failure to intervene argument is consistent with a liberal construction of the
complaint's allegations in Count I. *See* Complaint ¶ 9.

prevent other police officers from using excessive force can be liable under § 1983 if that officer has reason to know excessive force is being used and a realistic opportunity to intervene to prevent the harm from occurring. *Id., citing, Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise. *Woods v. Clay*, 2005 U.S. Dist. LEXIS 343, at *32-3 (N.D. Ill. Jan. 10, 2005) (police officers' summary judgment motion denied because there was a genuine issue of material fact whether the officer had a realistic opportunity to intervene to prevent additional constitutional violations).[8]

### 1.   Officer Pena

Lewis argues Officer Pena used excessive force and failed to intervene to stop Soto's choke hold. Lewis concedes the use of a three-point kneeling stance to handcuff an arrestee is appropriate under normal circumstances. He argues using a three-point kneeling stance when one officer is choking the detainee and another officer is laying on top of the detainee is excessive force. Lewis presents evidence that Pena saw Soto choking Hicks and Hicks struggling for his life (not resisting arrest) when he arrived on the scene. Pl. facts ¶¶ 6-9. Instead of intervening to stop Soto from choking Hicks, Pena used additional force. He placed his knee on Hicks' back to gain leverage to hand cuff Hicks' right hand. Pl. Resp. Officers' facts ¶¶ 83-84, 88. According to Lewis' evidence, Soto continued to choke Hicks until after Pena handcuffed him. Pl. Resp. Officers' facts ¶ 87.

---

[8]The officers' reliance on *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) is misplaced. *Wolf-Lillie* reiterates the long-standing rule that § 1983 does not support *respondeat superior* liability. Lewis does not seek to impose *respondeat superior* liability on any of the police officers.

Lewis presents expert medical testimony that Pena's use of force and restraint likely contributed to Hicks' death by asphyxiation. Viewing this evidence in Lewis' favor, there is a genuine issue of material fact whether Pena used excessive force.

### 2. Pena and De Van

Lewis argues Officers Pena and De Van should have intervened to stop Soto from choking Hicks. The officers argue they were not present when the excessive force was used and did not have a realistic opportunity to intervene to prevent the harm. Lewis presents evidence to the contrary. First, there is evidence Hicks was still alive when Officers Pena and De Van arrived on the scene. Pl. facts ¶¶ 83-84. Second, there is evidence Officers Pena and De Van witnessed Soto using a choke hold on Hicks for at least a couple of minutes. Officer De Van testified Soto had Hicks in a headlock when they arrived on the scene and that he kept him in a headlock for the couple of minutes it took Pena to handcuff Hicks. Pl. Resp. Officers' facts ¶ 87. Other eyewitnesses said Soto had Hicks in a choke hold, not a headlock. Pl. facts ¶¶ 6-7. All four officers admit deadly force was not justified. Pl. facts ¶¶ 8, 9, 11. This evidence creates a genuine issue of material fact whether the officers saw Soto choking Hicks and whether they had a realistic opportunity to intervene to stop the choking. *See Thompson v. City of Chicago*, 2004 U.S. Dist. LEXIS 9850, at *21-23 (N.D. Ill. May 27, 2004) (summary judgment denied where officers on the scene witnessed another police officer using a choke hold on the deceased victim and failed to intervene; choke hold was use of deadly force). Summary judgment on Count I is not warranted given the number of disputed facts surrounding Hicks' arrest.

10

### 3. Qualified Immunity

Defendants argue they are entitled to summary judgment on Count I because their conduct is protected by qualified immunity. They assert they did not violate Hicks' constitutional right to be free from excessive force and, even if they did, the contours of the right to be free from excessive force were not sufficiently clear that a reasonable police officer would understand that what they did violated Hicks' constitutional right. Lewis argues they are not entitled to qualified immunity because they knew deadly force was unjustified, yet they participated in it (Pena) and failed to intervene to prevent it (Pena and De Van).

In ruling on a motion for summary judgment on the issue of qualified immunity, the court must undertake a two-step analysis. *Saucier v. Katz*, 533 U.S. 194, 196 (2001). The threshold question is whether the facts construed in the light most favorable to the plaintiff, establish that a constitutional right was violated by the officers' conduct. *Id.* at 201. If a constitutional violation is established, then the next step is to determine if the contours of the constitutional right are sufficiently clear that a reasonable police officer would understand that what he is doing violates that right. *Id.* at 204. As set forth above, there are factual issues whether Pena and De Van violated Hicks' constitutional right to be free from excessive force. The court must therefore determine whether Hicks' right to be free from the type of force used was sufficiently clear that a reasonable officer would understand that what Pena and De Van did violated Hicks' constitutional right.

To meet this burden, Lewis must either point out a closely analogous case that established Hicks had a constitutional right to be free from the type of force the police officers used against him, or establish that the force used was so plainly excessive that the police officers should have been on notice that they were violating the Fourth Amendment. *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir.

11

1993). Lewis cites *Yang* and *Woods* to support his argument that police officers have a constitutional duty to intervene to prevent the use of excessive force. *Yang* clearly established the duty of a police officer to intervene to prevent excessive force if the officer has reason to know excessive force is being used and a realistic opportunity to intervene to prevent the harm from occurring. 37 F.3d at 285. However, neither *Yang* nor *Woods* addressed the use of choke holds. The court must therefore decide whether use of a choke hold was so plainly excessive that Pena and De Van should have been on notice that they were violating the Fourth Amendment by failing to intervene to stop Soto's use of a choke hold.

In *Thompson*, 2004 U.S. Dist. LEXIS 9850, at **19-20, plaintiff, on behalf of her deceased son, brought an excessive force claim against the police officer who applied a choke hold to her son, and the police officers who were on the scene. The officer who applied the choke hold moved for summary judgment on the basis of qualified immunity. The motion was denied because there was a genuine issue of material fact whether he applied a choke hold and whether the hold was the cause of death. It was undisputed that a choke hold constitutes deadly force and that deadly force was not warranted under the circumstances of the case. 2004 U.S. Dist. LEXIS 9850, at *19-20. The remaining officers' summary judgment motion was denied on the excessive force claim because there was an issue of fact whether they "saw and could have prevented Officer Hespe from applying pressure to Thompson's neck." *Id.* at * 23, *citing, Yang*, 37 F.3d at 285.

Similarly, Lewis presents evidence raising a factual issue whether Soto used a choke hold and whether the choke hold caused Hicks' death. The officers admit deadly force was not justified. They also admit Chicago police officers are taught not to use choke holds during an arrest, presumably because choke holds may be deadly. Officers' facts ¶ 67. Viewing the evidence in the

light most favorable to Lewis, there is a question of fact whether the force used by Soto was so plainly excessive as to violate Hicks' constitutional right to be free from excessive force. As set forth in *Yang*, 37 F.3d at 285, the Seventh Circuit has clearly established a constitutional duty on the part of police officers to intervene to prevent another officer from using excessive force if they have a realistic opportunity to do so. Issues of material fact preclude summary judgment on the basis of qualified immunity.

### 4. Conclusion on Excessive Force Claim

Genuine issues of material fact exist as to whether Pena used excessive force on Hicks, whether Pena and De Van witnessed Soto using a choke hold and had a realistic opportunity to intervene to prevent the choke hold. Given these disputed facts, Pena and De Van's summary judgment motion on Count I must be denied.

### B. Count III: Wrongful Death

In Count III, Lewis alleges a wrongful death claim against Pena and De Van. Under the Wrongful Death Act, 740 ILCS 180/1, Lewis must show Hicks' death was caused by the wrongful act, neglect or default of Pena and De Van. *Id.* Pena and De Van advance numerous arguments why summary judgment must be granted on Count III. First, they argue they were entitled to use reasonable force in effectuating an arrest. *See* 720 ILCS 5/7-5. Second, they argue they are immune from liability under the Illinois Tort Immunity Act, 735 ILCS 10/2-202, because their acts did not rise to the level of "willful and wanton" misconduct as defined under the Act. *See* 745 ILCS 10/1-210. Third, they argue they cannot be liable for Soto's conduct under the Illinois Tort Immunity Act.

The Illinois Tort Immunity Act prevents tort actions against public employees based on the acts of another person. "Except as otherwise provided by statute, a public employee, as such and

13

acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS 10/2-204. In *Thompson*, 2004 U.S. Dist. LEXIS 9850, at *24, summary judgment was granted on a wrongful death claim in favor of the officers who did not directly participate in the alleged unlawful choking. Even though the officers on the scene had a constitutional duty to intervene to prevent the use of excessive force, they could not be liable under the Illinois Wrongful Death Act based on a failure to intervene. The court held the Tort Immunity Act immunized them from liability for the wrongful death caused by the choking officer. *Id.*

## 1.   **Conduct During Arrest**

Pena and De Van cannot be liable for Hicks' wrongful death based on their alleged failure to intervene to prevent Soto's choke hold. The court must therefore examine whether there is any evidence Pena or De Van's willful and wanton conduct caused Hicks' death. Lewis seeks to hold De Van liable based merely on his failure to intervene. The record is devoid of any evidence that he caused Hicks' death by asphyxiation. The court must grant De Van's summary judgment motion on Count III. *See id.*

Lewis does not seek to hold Pena liable merely for Soto's alleged choke hold. Rather, Lewis presents evidence that Pena's use of force and restraint contributed to Hicks' death by asphyxiation. Indeed, the death certificate lists the cause of death as asphyxia due to restraint. Pl. facts, Ex. 9. The medical examiner testified that pressure on the chest and restriction of the arms can contribute to asphyxiation. Pl. facts ¶ 23. It is undisputed Pena put pressure on Hicks' chest by placing his knee on Hicks' back and restricted his arms by handcuffing him. Pl. Resp. Officers' facts ¶¶ 83, 85. Moreover, as set forth above, there is a factual issue whether Pena's use of force was reasonable and justified under the disputed circumstances, *e.g.*, Hicks not resisting arrest, Soto choking him.

14

Viewing the evidence in the light most favorable to Lewis, there is a factual issue whether Pena's use of force and restraint was unreasonable and caused Hicks' death.

Pena argues he cannot be liable under the Illinois Tort Immunity Act because there is no evidence he acted wilfully and wantonly. Willful and wanton conduct is defined as a course of action that shows an actual or deliberate intention to cause harm or, if not intentional, shows an utter indifference to or conscious disregard of the safety of others or their property. 745 ILCS 10/1-210. Whether conduct is willful and wanton is normally a factual issue for trial. *Urban v. Village of Lincolnshire*, 272 Ill. App. 3d 1087, 1094, 651 N.E.2d 683, 689 (1st Dist. 1995). As discussed above, Lewis presents evidence that Pena knew Soto was choking Hicks and that Hicks may have been struggling for his life. Two officers were already on top of Hicks restraining him. Nevertheless, Pena applied additional force that may have contributed to Hicks' death. Viewing the evidence in the light most favorable to Lewis, there is a factual issue whether Pena's use of additional force under the circumstances showed a conscious disregard for Hicks' safety. Pena's summary judgment motion on Count III must be denied.

## 2. Conduct in Responding to Hicks' Medical Needs

Lewis claims the officers are liable for wrongful death due to their indifference to Hicks' medical needs. Defendants argue they acted appropriately in responding to Hicks' medical needs. The Illinois Tort Immunity Act, 745 ILCS 10/4-105, provides:

> [n]either a local public entity nor a public employee is liable for injury proximately caused by the failure of an employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care.

15

Lewis argues the officers failed to take reasonable action to summon medical attention despite knowing immediate medical care was needed. He asserts defendants delayed in requesting an ambulance, failed to perform CPR, and failed to roll Hicks on his back to open his airway. Defendants argue they acted reasonably because they immediately dispatched an ambulance after Hicks became unresponsive, were not required to perform CPR, and held Hicks on his side until the paramedics arrived. Neither party cites any legal authority addressing their arguments.

According to Lewis' timeline, Hicks was handcuffed around 10:36 p.m. when Pena responded to the police radio call. Pl. facts ¶ 15. Hicks became unresponsive immediately after he was handcuffed. *Id.* Pena told police dispatch to "slow it down" at 10:36:20. Pena called for an ambulance one minute later at 10:37:20 p.m. *Id.* Viewed in the light most favorable to Lewis, this evidence does not create an issue of fact as to whether Pena or De Van willfully and wantonly failed to summon medical care for Hicks. At most, there was a one minute delay in calling an ambulance. Moreover, Lewis presents no evidence the police officers had a duty to administer CPR or to roll Lewis on his back to open his airway. Indeed, the Tort Immunity Act specifically immunizes officers from liability for failing to furnish medical care; the Act only requires them to summon medical care. 745 ILCS 10/4-105. Pena and De Van's summary judgment motion on Count III must be granted to the extent it alleges they failed to respond to Hicks' medical needs.

### 3. Conclusion on Count III

De Van's summary judgment motion must be granted on Count III. Pena's summary judgment motion on Count III must be granted in part and denied in part. Lewis' claim that Pena proximately caused Hicks' death withstands summary judgment; his claim that Pena failed to respond to Hicks' medical needs does not.

16

## C.    Count IV: Survival Claim

Lewis brings a claim under Illinois' survival statute for Hicks' pain and suffering prior to his death. Under 755 ILCS 5/27-6, the estate may recover for conscious pain and suffering experienced by the decedent prior to his death. To recover damages, a plaintiff must prove that the decedent actually and consciously suffered pain before death; where the death is instantaneous or where the decedent is rendered immediately unconscious, an action for pain and suffering cannot be sustained. *See In re Air Disaster*, 507 F. Supp. 21, 24 (N.D. Ill. 1980). The duration of the conscious pain and suffering determines the amount of recovery, not entitlement to damages.    *Ellig v. Delnor Community Hospital*, 237 Ill. App. 3d 396, 401, 603 N.E.2d 1203,1207 (2nd Dist. 1992).

Pena and De Van argue summary judgment must be granted because there is no evidence Hicks experienced any pain and suffering prior to his death. Lewis counters that the medical evidence regarding Hicks' physical injuries, the eyewitness account that Hicks was crying for help while the police battered him, and expert testimony that dying from asphyxiation is extremely uncomfortable, creates an issue of fact as to Hicks' pain and suffering. For purposes of deciding Pena and De Van's summary judgment motion, the court cannot consider evidence of Hicks' pain and suffering before they arrived on the scene.

Lewis presents evidence that Hicks was conscious when Pena and De Van arrived. According to eyewitnesses, Soto had Hicks in a choke hold. Pena applied additional force to Hicks' back with his knee. Hicks was squirming on the ground, and may have been struggling to breath. The medical examiner determined Hicks' cause of death to be asphyxiation due to restraint. Lewis' expert witness testified that Pena's use of force and restraint likely contributed to Hicks' death, and that a victim of asphyxiation suffers extreme discomfort before dying. Construing this evidence in

17

the light most favorable to Lewis, there is a factual issue whether Hicks consciously experienced pain and suffering after Pena and De Van arrived. *See Cooper v. Chicago Transit Authority*, 153 Ill. App. 3d 511, 523, 505 N.E.2d 1239, 1246 (1st Dist. 1987) (denial of judgment as a matter of law on survival claim affirmed where plaintiff presented testimony that decedent was moaning before death). However, this determination does not end the court's inquiry.

As set forth above, the Illinois Tort Immunity Act prevents tort actions against public employees based on the acts of another person. 745 ILCS 10/1-204. De Van cannot be liable on Count IV based solely on his failure to intervene. *See Thompson*, 2004 U.S. Dist. LEXIS 9850, at * 24-25 (summary judgment on survival claim granted for officer who failed to intervene to stop alleged excessive force). The record is devoid of any evidence that De Van caused Hicks to experience any pain and suffering. Accordingly, De Van's summary judgment motion on Count IV must be granted. In contrast, Pena's summary judgment motion on Count IV must be denied because there are issues of fact whether he used unreasonable force that contributed to Hicks' death by asphyxiation. In sum, De Van's summary judgment motion on Count IV is granted; Pena's summary judgment motion on Count IV is denied.

### D. Count V: Intentional Infliction of Emotional Distress

Lewis asserts an intentional infliction of emotional distress claim against Pena and De Van in Count V based on the same conduct alleged in the earlier claims. To prevail on this claim, Hicks must establish that: (1) the officers' conduct was extreme and outrageous; (2) the officers either intended their conduct to inflict severe emotional distress, or knew there was a high probability their conduct would cause severe emotional distress; and (3) the officers' conduct in fact caused severe emotional distress. *See Doe v. Calumet City*, 161 Ill.2d 374, 641 N.E.2d 498, 506-7 (1994).

18

Liability has been found only where conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. *Woods*, 2005 U.S. Dist. LEXIS 343, at * 47. Conduct may be characterized as extreme and outrageous where (1) the character of the conduct itself is extreme and outrageous; (2) the conduct arises out of an abuse of a position or relationship in which the defendant has authority over the plaintiff, or (3) the defendant knew of some peculiar susceptibility of the plaintiff to emotional distress. *Id., citing, Rudis v. Nat'l College of Educ.*, 191 Ill. App. 3d 1009, 548 N.E.2d 474, 476 (1989).

Defendants first argue there is no evidence Officers Pena and De Van subjected Hicks to intentional infliction of emotional distress. They contend the undisputed evidence shows Hicks' death was sudden. Lewis counters with evidence that the police officers physically attacked Hicks while he was conscious, thus subjecting him to severe emotional distress. The parties fail to direct the court to any legal authority addressing emotional distress claims brought against police officers for alleged excessive force.[9] The court's research uncovered several cases addressing the issue.

Not every battery by a police officer will satisfy the extreme and outrageous requirement for an intentional infliction of emotional distress claim. *Dufour-Dowell v. Cogger*, 969 F. Supp. 1007, 1123 (N.D. Ill. 1997). In situations involving excessive force by police officers, there must be more than just excessive force. To qualify as extreme and outrageous, the force used must be extreme or cause severe physical injury. *Id.;Varvaris v. Chicago Police Officers*, 1996 U.S. Dist. LEXIS 13262, **12-14 (N.D. Ill. Sept. 11, 1996) (police officers' motion to dismiss intentional infliction of

---

[9]Lewis cites *Treece v. City of Naperville*, 1998 U.S. Dist. LEXIS 3697 (N.D. Ill. March 24, 2998). *Treece* is inapposite because the emotional distress claim was based on evidence that the police officers fabricated police records and solicited a bribe from plaintiff. *Id.* at * 42. Lewis does not contend any officer fabricated police records or solicited a bribe from Hicks.

emotional distress claim denied where plaintiff alleged the officers severely beat him without justification and threatened him with further harm if he did not refuse medical treatment).

In *Medley v. Turner,* 869 F. Supp. 567, 578 (N.D. Ill. 1994), a state trooper's summary judgment motion on plaintiff's emotional distress claim was denied. Plaintiff alleged the state trooper failed to intervene or protect her from another state trooper's assault. The non-assaulting state trooper moved for summary judgment, arguing he did not participate in the alleged assault. Plaintiff responded he could be held liable because he was present during the assault and failed to prevent it. *Id.* The motion was denied because factual issues existed as to whether the state trooper knew the other trooper was assaulting plaintiff. Hence, the court could not determine as a matter of law whether or not the trooper's conduct was extreme and outrageous. *Id.*

Similarly, in *James v. Concepcion,* 1998 U.S. Dist. LEXIS 16535, at *5 (N.D. Ill. Oct. 9, 1998), plaintiff brought an intentional infliction of emotional distress claim against two officers, one who allegedly assaulted her, and another who allegedly witnessed the assault. Plaintiff presented evidence that the assaulting officer jumped on top of her, physically assaulted her, and pulled her out of her car. *Id.* She asserted the other officer witnessed the assault. *Id.* The officers moved for summary judgment, arguing their conduct was not extreme and outrageous. The court held plaintiff's evidence raised issues of fact whether the assaulting officer's conduct was extreme and outrageous and whether the non-assaulting officer witnessed the assault. *Id.* at *22. Accordingly, summary judgment was denied because the court could not "determine whether [the non-assaulting officer's] failure to intervene was extreme and outrageous as a matter of law." *Id.*

Applying these standards, Lewis presents sufficient evidence to create issues of fact whether Pena and De Van's conduct was extreme and outrageous and whether they knew there was a high

20

probability that their conduct would cause Hicks severe distress. As set forth above, there are genuine issues of fact whether Pena and De Van witnessed Soto choking Hicks, and Hicks struggling for his life. It is undisputed neither officer attempted to intervene to stop Soto's conduct. Moreover, there are issues of fact whether Pena's use of the three-point kneeling stance was reasonable under the circumstances and whether his additional force contributed to Hicks' death by asphyxiation. Given this evidence, a jury could reasonably conclude that Pena and De Van's conduct was extreme and outrageous.

Defendants next argue summary judgment must be granted on Count V because there is no evidence Hicks suffered severe emotional distress prior to his death. They argue his death was instantaneous and he could not have suffered severe emotional distress. Lewis presents evidence Hicks remained conscious for at least several minutes after Pena and De Van arrived and that he was being choked throughout this period of time. Defendants cite no legal authority supporting their argument that a plaintiff who dies after experiencing severe emotional distress cannot recover. Illinois courts have delineated with some precision the type of emotional distress that is sufficiently severe. When plaintiffs have complained that a defendant's actions caused them simply to become annoyed, frustrated, stressed, distressed, humiliated or nervous, courts do not allow recovery. *Honaker v. Smith*, 256 F.3d 477, 495 (7th Cir. 2001). In contrast, when the distress has manifested itself either through physical symptoms or has necessitated medical treatment, Illinois courts are inclined to characterize the emotional distress as severe. *Id.* at 496. In many cases, the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress existed. *Id.*

21

Lewis presents sufficient evidence to create a genuine issue of material fact whether Hicks endured severe emotional distress as a result of the officers' conduct. Drawing all reasonable inferences in Lewis' favor, a jury could reasonably conclude that Hicks suffered severe emotional distress while Soto was choking him. Hicks remained conscious for at least several minutes while Soto choked him and Pena handcuffed him. Lewis' medical evidence describes the extreme discomfort an asphyxiation victim endures prior to death. Given this evidence, the court cannot determine as a matter of law whether or not Hicks suffered severe emotional distress prior to his death. Summary judgment must therefore be denied on Count V.

## III.  Officer Soto and Arnolts' Motion for Summary Judgment

### A.  Count III: Wrongful Death for Failure to Respond to Hicks' Medical Needs

Officers Soto and Arnolts move for partial summary judgment on Count III to the extent Lewis claims they failed to reasonably respond to Hicks' medical needs. They argue there is no evidence they willfully and wantonly disregarded Hicks' medical needs, as required to state a claim under the Illinois Tort Immunity Act, 745 ILCS 10/1-210. Lewis responds that the officers delayed in calling an ambulance, failed to perform CPR and failed to roll Hicks on his back to open his airway. For the same reasons set forth above, this evidence does not create an issue of fact as to whether any of the officers acted willfully and wantonly in failing to summon medical attention for Hicks.[10] Accordingly, summary judgment must be granted for Officers Soto and Arnolts on Count III to the extent that count alleges the officers failed to respond to Hicks' medical needs.

---

[10]Lewis suggests Officers Soto and Arnolts had an independent duty, separate and apart from Officer Pena, to call for an ambulance. This argument is rejected because it was reasonable for Officers Soto and Arnolts to rely on another officer's call for an ambulance.

22

### B. Count IV: Survival Action

Officers Soto and Arnolts argue summary judgment should be granted on Count III because there is no evidence Hicks suffered any pain and agony prior to his death. For the reasons set forth above with regard to Pena and De Van's summary judgment motion on Count IV, there is a genuine issue of material fact whether Hicks suffered pain and agony prior to his death. The court must deny Officer Soto and Arnolt's motion with respect to Count IV.

### C. Count V: Intentional Infliction of Emotional Distress

Officers Soto and Arnolts assert summary judgment is warranted on Count V because Lewis has no evidence Hicks suffered severe emotional distress prior to his death. For the reasons previously discussed, Lewis presents sufficient evidence to withstand summary judgment on Count V.

### CONCLUSION

The individual defendants' motion for summary judgment is granted in part and denied in part. Summary judgment on Count I is denied for Officers Pena and De Van. Summary judgment on Count III is granted for Officer De Van. To the extent Count III is based on Lewis' claim that the officers failed to respond to Hicks' medical needs, summary judgment is granted for Officers Pena, Soto and Arnolts. Summary judgment on Count III is otherwise denied for Officer Pena. Summary judgment on Count IV is granted for Officer De Van, and denied for Officers Pena, Soto and Arnolts. Summary judgment on Count V is denied for all four officers.

April 11, 2005

ENTER:

*Suzanne B. Conlon*

Suzanne B. Conlon
United States District Judge

23